**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| United States of America, ) | CR 05-00271-PHX-NVW |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Shannon Kindelay, ) | |
| ) | |
| Defendant. ) | |

Pending before the court are the Government's Memorandum Re: Restitution (Doc. # 71) and Defendant's Response Memorandum Regarding Restitution After Remand (Doc. # 74).

Defendant Shannon Kindelay pled guilty to involuntary manslaughter under 18 U.S.C. § 1112, a class D felony offense, and assault resulting in serious bodily injury under 18 U.S.C. § 113(a)(6), a class C felony offense, for killing one person and maiming others in a drunk driving car accident in October 2004. On June 12, 2006, she was sentenced to 41 months of imprisonment, to be followed by three years of supervised release. The plea agreement states that Kindelay "specifically agrees to make restitution, including but not limited to medical bill [sic], to all victims listed in the indictment and their assignees in the amount determined by the court at sentencing." Doc. # 42 at 3.

With respect to the charge of involuntary manslaughter, the plea agreement states in part that "defendant committed an unlawful act not amounting to a felony, or committed a lawful act, done either in an unlawful manner or with wanton or reckless disregard for human

1  life, which might produce death," and that "defendant either knew that such conduct was a
2  threat to the lives of others or knew of circumstances that would reasonably cause the
3  defendant to foresee that such conduct might be a threat to the lives of others." Doc. # 42
4  at 5-6. With respect to the assault charge, the plea agreement indicates in relevant part that
5  "defendant intentionally or recklessly struck or wounded the victim or victims." *Id.* at 6.

6  On September 8, 2006, the court ordered that Kindelay pay restitution in the amount
7  of $68,367.83. Kindelay's inability to pay notwithstanding, the restitution order was
8  affirmed by this court on October 17, 2006, on the ground that assault resulting in a serious
9  bodily injury is a "crime of violence" under 18 U.S.C. § 16 that triggers the mandatory
10 restitution provisions at 18 U.S.C. § 3663A. Approximately one week later, the Ninth Circuit
11 issued *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121 (9th Cir. 2006), which addressed whether
12 crimes involving the reckless use of force may constitute "crimes of violence" for the
13 purpose of 18 U.S.C. § 16. Defendant appealed the October 17 order to the Ninth Circuit and
14 requested remand in light of *Fernandez-Ruiz*. Receiving no opposition from the
15 Government, the Ninth Circuit granted Kindelay's request and remanded. This order
16 addresses whether restitution is still warranted after *Fernandez-Ruiz*.

**I.  Restitution is Not Mandatory Under 18 U.S.C. § 3663A Because Assault Resulting in Serious Bodily Injury is Not a Crime of Violence**

Whether restitution is mandatory or discretionary hinges on whether the offense of conviction is a "crime of violence." 18 U.S.C. § 16 defines that term as follows:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The satisfaction of either prong of this definition is determined by first asking whether the "full range of conduct" proscribed by the statute under which the defendant was convicted "meets the definition of a crime of . . . violence." *Fernandez-Ruiz*, 466 F.3d at 1125. This inquiry entails a "comparison of the elements of the statute of conviction to the generic

- 2 -

definition" of "crime of violence" to determine whether the conduct proscribed is broader than that encompassed by the generic definition. *Ruiz-Morales v. Ashcroft*, 361 F.3d 1219, 1221-22 (9th Cir. 2004). If the proscribed conduct falls entirely within the definition of "crime of violence," it may be concluded categorically that convictions under the statute are convictions for crimes of violence. If, however, the conduct proscribed by the statute of conviction is broader than the definition of "crime of violence," another stage of inquiry remains. *Fernandez-Ruiz*, 466 F.3d at 1132. At this second stage, a crime is a "crime of violence" only if the documents of conviction, such as the charging document or a signed plea agreement, show that the conviction "entailed an admission to, or proof of, the necessary elements of a crime of violence." *Id.* at 1132.

### A. Kindelay's Assault Offense is Not a Crime of Violence Under 18 U.S.C. § 16(a)

It cannot be concluded categorically from the statute of conviction that Kindelay's assault was a crime of violence under 18 U.S.C. § 16(a). The crime of assault resulting in serious bodily injury under 18 U.S.C. § 113 may be based on reckless conduct. *See United States v. McInnis*, 976 F.2d 1226, 1234 (9th Cir. 1992); *United States v. Loera*, 923 F.2d 725, 728 (9th Cir. 1991). Offenses committed through the reckless use of force no longer constitute crimes of violence under 18 U.S.C. § 16(a). *Fernandez-Ruiz*, 466 F.3d at 1132. The range of conduct proscribed at 18 U.S.C. § 113 is thus broader than that envisioned by 18 U.S.C. § 16(a).

Nor is it apparent from the documents of conviction that Kindelay intentionally, rather than merely recklessly, used force in committing her assault. The plea agreement states that Kindelay "intentionally or recklessly struck or wounded" her victims. Doc. # 42 at 6. While the disjunctive in this quoted text appears to leave open the possibility that Kindelay intentionally used force, the facts recited in the plea agreement give no indication that Kindelay committed her assault with anything other than a mental state of pure recklessness. *Id.* As a result, the assault is not a crime of violence under 18 U.S.C. § 16(a).

- 3 -

**B.     Kindelay's Assault is Not a Crime of Violence Under 18 U.S.C. § 16(b)**

The Government argues that even if assault resulting in serious bodily injury is not a crime of violence under 18 U.S.C. § 16(a), it is a crime of violence under section 16(b). The argument is rejected.  "Section 16(b) sweeps more broadly than § 16(a)" and contains only two elements: (1) a felony that (2) "by its nature . . . involves a substantial risk that physical force . . . may be used." *Leocal v. Ashcroft*, 543 U.S. 1, 10 (2004). However, section 16(b) "contains the same formulation . . . found to be determinative in § 16(a): the use of physical force against the person or property of another." *Id.* at 11. This formulation is given "an identical construction" to the correspondent language in section 16(a). *Id.* Because the words "substantial risk" relate to the "use of force, not to the possible effect of a person's conduct," *id.* at 10 n.7, and the word "use" has been interpreted to require an "active employment" of force with a "higher degree of intent than negligent or merely accidental conduct," *id.* at 9, a crime is not a "crime of violence" under section 16(b) unless it "rais[es] a substantial risk that the actor will *intentionally* use force in the furtherance of the offense," *Tran v. Gonzales*, 414 F.3d 464, 465 (3d Cir. 2005) (emphasis in original); *see also, e.g.*, *Bejarano-Urrutia v. Gonzales*, 413 F.3d 444, 446-47 (4th Cir. 2005) (holding that 16(b) hinges on whether the defendant's action "intrinsically involve[s] a substantial risk that force will be applied as a means to an end") (internal quotation marks omitted); *United States v. Portela*, 469 F.3d 496, 499 (6th Cir. 2006) (holding generally that "a crime requiring only recklessness does not qualify as a 'crime of violence' under 18 U.S.C. § 16"); *Bazan-Reyes v. INS*, 256 F.3d 600, 610 (7th Cir. 2001) (explaining that section 16(b) addresses a defendant's "willingness to risk having to commit a crime of specific intent"). *Fernandez-Ruiz* reflects this view. 466 F.3d at 1132 ("In light of *Leocal*, we expressly overrule our cases holding that crimes of violence under 18 U.S.C. § 16 may include offenses committed through the reckless, or grossly negligent, use of force.").

Looking strictly at the statute of conviction, it is apparent that assault under 18 U.S.C. § 113(a)(6) is not a crime of violence under 18 U.S.C. § 16(b). The crime of assault resulting in serious bodily injury under section 113, as explained above, may be based on a mens rea

- 4 -

1  of pure recklessness. The cited case precedent makes clear that pure recklessness is
2  insufficient under section 16(b).

3  Reviewing the documents of conviction, the appropriate conclusion is again that
4  Kindelay's assault was not a crime of violence under section 16(b). The Government does
5  not argue that the use of force involved in Kindelay's assault was carried out with specific
6  intent. Nor is there any indication in the record that Kindelay acted recklessly with regard
7  to a risk of committing a crime of specific intent.

8  The Government cites to *United States v. Zunie*, 444 F.3d 1230, 1238 (10th Cir.
9  2006), and *Blake v. Gonzales*, 481 F.3d 152 (2d Cir. 2007), for the proposition that assault
10 under 18 U.S.C. § 113(a)(6) is a "crime of violence" under 18 U.S.C. § 16(b). These cases
11 need not be addressed at length. To the extent that they diverge from the Ninth Circuit's
12 recent ruling in *Fernandez-Ruiz*, they lack even persuasive force for this court. While
13 *Fernandez-Ruiz* only directly involved the application of 18 U.S.C. § 16(a), much of the
14 language of the case applies to sections 16(a) and (b), *see*, *e.g.*, 466 F.3d at 1130 ("[N]either
15 recklessness nor gross negligence is a sufficient mens rea to establish that a conviction is for
16 a crime of violence under § 16."), and *Leocal* made clear that the mens rea requirements are
17 "identical" for both sections of the statute, 543 U.S. at 11.

18 **II.    Restitution Will Be Ordered Under 18 U.S.C. § 3663**

19 **A.    Restitution is Warranted Under Section 3663(a)(1)(B)**

20 Because Kindelay was not convicted for a crime of violence under 18 U.S.C. §§ 16(a)
21 or (b), the mandatory restitution provisions of 18 U.S.C. § 3663A do not apply. 18 U.S.C.
22 § 3663A(c)(1)(A)(i). Instead, whether to award restitution is left to the court's discretion
23 based on consideration of the "amount of the loss sustained by each victim as a result of the
24 offense," "the financial resources of the defendant," "the financial needs and earning ability
25 of the defendant," and "such other factors as the court deems appropriate." 18 U.S.C. §
26 3663(a)(1)(B)(i). A sentencing court is not necessarily prohibited under this statute from
27 imposing restitution "even on a defendant who is indigent at the time of sentencing." *United*
28 *States v. Newman*, 6 F.3d 623, 631 (9th Cir. 1993). However, because it is important that

1  criminal defendants "have at least a hope of fulfilling and complying with each and every
2  order of the court," restitution may not be entered if the record does not reflect any evidence
3  that the defendant is presently able, or in the future may be able, to pay the amount ordered.
4  *United States v. Ramilo*, 986 F.2d 333, 336 (9th Cir. 1993); *see also United States v. English*,
5  92 F.3d 909, 917 (9th Cir. 1996).

6        The amount of loss sustained by the victims favors an order of restitution in the
7  amount of $68,367.83. That sum reflects the cumulative proven loss that the victims
8  sustained as a direct result of the conduct for which Kindelay was convicted. The sum covers
9  lost wages and compensates for funeral expenses and property damage. *See* Doc. # 53 at 2-4.

10       Kindelay's financial condition, on the other hand, weighs against an award of
11 restitution. She has no assets and owes $7,000 on the vehicle she was driving when she ran
12 into the victims. She has four children, one of whom has congenital heart problems and
13 receives $575 per month in Social Security benefits. Kindelay graduated from high school
14 and made $25 an hour in her most recent job as a telephone programmer for her father's
15 company, Kindelay Communications, but she lacks a college education and quit her job in
16 2002 to take care of her children. She is an alcoholic and has a history of marijuana and
17 cocaine use. Kindelay has lived with either her parents or her boyfriend's parents for the
18 majority of the past decade, but she and her boyfriend plan to rent a home with their four
19 children on the San Carlos Apache Reservation once she is released from custody.
20 Cumulatively, these facts make it unlikely that she will be able to pay $68,367.83 within a
21 short period of time.

22       Balancing these considerations, the court finds that restitution should be awarded in
23 the amount of $68,367.83. Even though full repayment within Kindelay's term of supervised
24 release is implausible, her financial limitations are not so severe as to preclude periodic
25 payment of a modest sum for the duration of this court's criminal jurisdiction over the case.
26 To the extent that the restitution amount remains unpaid after the three-year period of
27 supervised release, Kindelay's most recent wage of $25 an hour suggests that she may be
28 able to repay the victims fully in the future. *Ramilo*, 986 F.2d at 336. Specifically, the

1 previous wage suggests a capacity for employment in a position that will yield a gross annual
2 income approaching $50,000, with after-tax income amounting to approximately $35,000.
3 That income would only increase over time, with possible incremental adjustments for
4 inflation, experience, and performance. The resulting income would likely enable Defendant
5 to pay restitution of at least $200 per month and pay full restitution within her work life,
6 notwithstanding her various other financial circumstances. The fact that Kindelay was able
7 to perform at her previous position despite contemporaneous problems with substance abuse
8 suggests an ability to hold comparable employment despite a possible recurrence of
9 substance abuse in the future. The support that Kindelay has historically received from her
10 family, combined with the low cost of living on the San Carlos Apache Reservation to which
11 Kindelay plans to return, also suggests that her financial burden will be manageable.
12 Approximately six total years of imprisonment and supervised release will likely solve
13 Kindelay's alcoholism and thereby contribute to her future ability to sustain employment and
14 make restitution.

15 The court recognizes that the present finding of ability to pay is at odds with the Order
16 dated September 8, 2006, which states that Kindelay is "highly unlikely ever to be able to
17 pay anything beyond token restitution." Doc. # 53 at 1-2. However, that statement was
18 dictum that was made without extensive consideration of the relevant facts and without the
19 benefit of briefing on the rule presented in *Ramilo*. Carefully considering Kindelay's
20 financial circumstances, it is apparent that she may be able to pay in full in the future,
21 notwithstanding her various financial limitations. Kindelay's prior income suggests an
22 earning capacity sufficient for long-term satisfaction of the restitution amount.

23 Kindelay objects that restitution may not be ordered because it is clear that she cannot
24 pay in full within the period of supervised release. This argument is rejected. Several cases
25 have suggested that restitution may be ordered even when the defendant's financial
26 circumstances preclude her from paying the full amount within the period of supervised
27 release as long as she is capable of making the partial payments that are scheduled within that
28 period and possesses some prospect of paying in full thereafter. *United States v. Porter*, 90

1 F.3d 64, 69-70 (2d Cir. 1996), for example, upheld a restitution order of approximately
2 $169,000 notwithstanding the defendant's possible inability to pay the full amount within a
3 three-year period of supervised release. In part, this outcome was justified because the
4 payments scheduled during the period of supervision were reasonable at only $25 per month.
5 Insofar as the restitution remained unpaid after the period of supervised release, it would
6 become enforceable as if it were a civil judgment. If the defendant was not at that point
7 immediately capable of paying the outstanding restitution amount, state and federal
8 protections afforded to judgment debtors would accommodate her financial circumstances
9 and facilitate future repayment in full. *Id.*; *see also, e.g.*, *United States v. Mattice*, 186 F.3d
10 219, 231 (2d Cir. 1999).

11 The approach in *Porter* is consistent with Ninth Circuit authority. The restitution
12 order in *Ramilo* violated 18 U.S.C. § 3663 because it required the defendant to pay over
13 $400,000 "during the term of his supervised release" despite the absence of any evidence that
14 he would be able to do so. 986 F.2d at 334, 337. *Ramilo* focused on the defendant's ability
15 to pay during the supervised release period only because that was the window within which
16 full payment was ordered by the district court, not because restitution must in all
17 circumstances be fully payable within that period. Given that *Ramilo*'s central concern was
18 simply to promote compliance with restitution orders and ensure that defendants can pay
19 "when required to do so," *id.* at 335, the case should present no obstacle where a restitution
20 amount can only partially be paid during the period of supervised release if partial payment
21 is what the court has ordered for that period and there is some fair prospect that the defendant
22 will subsequently be able to satisfy the outstanding restitution amount.

23 *Porter* is also consistent with *Newman*, which invalidated a restitution order of
24 $55,173 for lack of evidence of ability to pay. 6 F.3d at 631. Like *Ramilo*, nothing in
25 *Newman* requires that payment in full must be possible within the period of supervised
26 release. The defendant's ability to pay was considered in reference to the period of
27 supervised release simply because full restitution was a condition of supervised release. *Id.*
28 at 626.

The approach in *Porter* also coheres with the purpose of the Victim and Witness Protection Act, 18 U.S.C. § 3663 et seq, which was intended to "require full restitution wherever possible," *Mattice*, 186 F.3d at 231, and "to assist victims in collecting the restitution orders entered by the court," *United States v. Mindel*, 80 F.3d 394, 397 (9th Cir. 1996). This conclusion flows from the observation that ability to pay is as much a product of the payment schedule as it is of the total restitution amount. Because the value of each scheduled payment must increase as the payment window narrows, restitution would often be impractical if it were necessary that a defendant possess the ability to make full payment within what may be a relatively short period of supervised release. Consideration of ability to pay over a broader period that both includes and follows supervised release, by contrast, facilitates restitution by generating payment schedules that are feasible for defendants.

The legislative history of the Victims and Witness Protection Act also suggests that ability-to-pay analysis should not be confined to periods of supervised release. In reference to section 3663(a), the Report from the Senate Committee on the Judiciary explains:

> The Committee recognizes that an offense . . . may have lifelong cost implications for the victim or the victim's family, but it also recognizes that there may sometimes be a practical necessity in limiting both the amount of restitution ordered and the period during which restitution payments are ordered to be made. . . . [T]he Committee's intention is that the offender's ability to pay will be a factor in the restitution order, and that the order will cover a period that will reasonably assure full and complete payment of the restitution order *notwithstanding any maximum period of probation or incarceration the defendant could have served*.

S. Rep. No. 97-532, at 31-32 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2515, 2537-38 (emphasis added). If, as the italicized language suggests, section 3663 authorizes restitution orders with periods of repayment that are not limited to even maximum terms of probation or incarceration, there is little reason to believe that restitution must be payable in full within a period of supervised release.

### B.     Restitution is Also Warranted Under Section 3663(a)(3)

The Government alternatively contends that restitution is warranted because Kindelay expressly consented to pay full restitution when she signed her plea agreement.[1] This argument invokes 18 U.S.C. § 3663(a)(3), which provides that restitution may be ordered "to the extent agreed to by the parties in a plea agreement." In evaluating whether restitution is warranted under this provision, the Government is to be held to the "literal terms" of the plea agreement, with any ambiguity construed in favor of the defendant. *United States v. Phillips*, 174 F.3d 1074, 1075 (9th Cir. 1999).

Restitution will also be ordered on the basis of the plea agreement. That document states that Kindelay "specifically agrees to make restitution, including but not limited to medical bill [sic], to all victims listed in the indictment and their assignees in the amount determined by the court at sentencing." Doc. # 42 at 3. This language plainly commits Kindelay to pay restitution without regard to her financial circumstances. To the extent that her obligation is uncertain, it is only with regard to the precise amount of the required payment. The obligation to make some level of restitution is absolutely unqualified.

Kindelay contends that the plea agreement is nevertheless ambiguous with regard to her restitution obligation because it also states that "the court shall . . . [o]rder the defendant to make restitution to any victim of the offense unless, pursuant to Title 18, United States Code, Section 3663, the court determines that restitution would not be appropriate in this case." Doc. # 42 at 2. She asserts that the effect of this language is that she agreed to make restitution, but only insofar as restitution is appropriate under 18 U.S.C. § 3663. Because restitution cannot be ordered under 3663(a)(1)(B) absent some evidence of an ability to pay,

---

[1] The Government now raises this argument for the very first time despite multiple opportunities to do so in briefs previously filed with this court and the Ninth Circuit. The Government would have better served the court by not holding back until the near conclusion of extensive litigation here and on appeal. However, the argument will be addressed on the merits because of the recurring importance of the subject.

- 10 -

1  and Kindelay perceived that she was unable to pay, the argument continues, there was never
2  an actual agreement to make restitution.

3        Kindelay's argument is unpersuasive. In part, this is because the reference to 3663
4  is located in the section of the plea agreement that pertains to disclosure of maximum
5  penalties. Rather than modify Kindelay's obligations under other sections of the plea
6  agreement, that section aims to inform Kindelay of the court's authority to order restitution.
7  The language pertaining to section 3663 is simply a supplemental means of ensuring that
8  Kindelay has been sufficiently notified of the nature and effect of the plea agreement, as
9  required by Federal Rule of Criminal Procedure 11(b)(1)(K).

10       The other problem with Kindelay's argument is that section 3663 contains not only
11 3663(a)(1)(B), but also 3663(a)(3). That provision has been interpreted to permit restitution
12 regardless of ability to pay when a defendant has "clearly acquiesc[ed]." *United States v.*
13 *Zink*, 107 F.3d 716, 719 (9th Cir. 1997); *see also United States v. Thompson*, 39 F.3d 1103,
14 1105 (10th Cir. 1994); *United States v. Bartsh*, 985 F.2d 930, 933 (8th Cir. 1993). It is hard
15 to see how Kindelay's "specific[] agree[ment] to make restitution" is anything other than a
16 clear acquiescence to do so. Doc. # 42 at 3. Because such an agreement under 3663(a)(3)
17 obviates the need to consider financial circumstances under 3663(a)(1)(B), the only provision
18 of 3663 under which restitution may be found inappropriate as a matter of judicial discretion,
19 Kindelay had no reason to believe that restitution would be deemed inappropriate under
20 3663, and accordingly had no reason to believe that the reference to 3663 qualified the
21 restitution obligation. The fact that Kindelay now objects to restitution cannot overcome the
22 clear terms of the plea agreement.

23       IT IS THEREFORE ORDERED that the request for restitution contained in the
24 Government's Memorandum Re: Restitution (Doc. # 71) is GRANTED.

25       IT IS FURTHER ORDERED that the Restitution Order of September 8, 2006 (Doc.
26 # 53), and the October 17, 2006 Order affirming the September 8 Order (Doc. # 58) are
27 vacated.

28

IT IS FURTHER ORDERED that Defendant shall pay restitution in the total amount of $68,367.83 as part of the judgment of June 14, 2006 (Doc. # 43), as follows:

$8,341.43 to the Graham County Attorney's Victim/Witness Program

$250.00 to Lorena Rustin for eyeglasses

$17,909.04 to Phoenix Rehabilitation Hospital (Exhibit 11)

$2,500.00 to San Carlos Apache Tribe

$300.00 to Theodore Rustin

$681.32 to Graham County

$1,293.68 to Melvin Rustin

$1,700 to Celena Rustin for automobile loss

$939.84 to Melvin Rustin for court mileage

$34,452.52 to Lorena Rustin for lost wages

IT IS FURTHER ORDERED that restitution shall be paid at the rate of $200 per month, commencing 90 days after release from custody of the Bureau of Prisons.

DATED this 20th day of August 2007.

_____
Neil V. Wake
United States District Judge